# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HORATIO DEMARIOS SMITH,** | : | **Civil No. 1:13-CV-2914** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Caldwell)** |
| | : | |
| **R. LINDSEY, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

#### A.   Factual Background

This case, which comes before us on an uncontested motion for summary judgment filed by the defendants, involves allegations by the plaintiff, Horatio DeMarios Smith, that prison officials used excessive force to subdue the plaintiff when they discovered him assaulting a fellow inmate. With respect to this excessive force claim advanced by Smith, the currently undisputed facts are largely reflected by immutable witnesses, prison surveillance videos. Those undisputed facts reveal the following:

On March 30, 2013, Horatio Smith was assigned to E Unit, cell 103 at the United States Penitentiary, Canaan. (Doc. 38, ¶1.) Smith's cellmate was inmate Galen Fisher. (Id., ¶2.) On March 30, 2013, at approximately 8:20 a.m., while completing

rounds on the unit's upper tier, Senior Officer Keith Ball heard shouting coming from cell 103.  Approaching the cell,  Senior Officer Ball observed an affray between Smith and his cellmate Fisher, an assault in which Smith appeared to be the aggressor and was striking Fisher with a closed fist.  (Id., ¶¶ 3 and 4.)  Senior Officer Ball also observed Smith holding a weapon in his right hand, a weapon which was later recovered and was found to be two padlocks placed into a sock.  (Id., ¶¶5 and 6.)

Senior Officer Ball immediately radioed the institution's Control Center for assistance before proceeding directly to cell 103, and ordering Smith to drop his weapon and submit to hand restraints.  (Id., ¶¶ 7 and 8.)  Smith ignored these instructions, stating he was not going to put the weapon down until inmate Fisher was placed in handcuffs.  (Id., ¶9.)  Additional staff arrived on the scene, observing the affray between Smith and Fisher, and repeatedly instructing Smith the drop his weapon and submit to restraints.  (Id., ¶¶ 10-17.)  Smith failed to comply with all of these direct orders.  (Id., ¶18.)  Ultimately, approximately twenty staff members arrived to assist with the incident, including Lieutenant Robert Thomas.  (Id., ¶19.)

Upon arriving at the scene, Lieutenant Thomas took control of the situation. Lieutenant Thomas observed Smith striking inmate Fisher in the head and upper body with the object later determined to be a combination lock placed in a sock, and also ordered Smith to drop the weapon and submit to restraints to no avail.  (Id., ¶¶20-23.)

Instead, Smith was observed stepping towards inmate Fisher in an attempt to strike him again with the weapon.  (Id., ¶24.)  Presented with this assaultive violence by Smith, Smith's refusal to relinquish the weapon, and the inability of staff to approach him safely without placing themselves in danger, Lieutenant Thomas discharged five to eight pepper ball chemical rounds into the cell to gain the compliance of these inmates.  (Id., ¶25.)  These chemical agents had the desired effect, and at 8:25 a.m., Smith finally surrendered the weapon and submitted to hand restraints and both inmates were removed from the cell.  (Id., ¶26.)

While Smith has alleged that he was subjected to excessive force and has asserted both that crushing force was administered to his chest effectively choking him and claimed that correctional staff stood on his head, the videotaped evidence does not support this claim.  Instead, that immutable evidence shows that upon exiting the cell, Smith was ordered to lay face down on the floor.  Smith was placed face down on the ground using a minimal amount of force.  (Id., ¶¶27-29.)  After Smith was removed from his cell, he was placed on the floor by Unit Manager Lindsay and Lieutenant Gonzalez assisted staff in searching Smith to assure Smith was not concealing any other weapons.  (Id., ¶37.)  No additional weapons were discovered.  (Id., ¶ 38.)  At no time during this search does the video depict Unit Manager Lindsay or Lieutenant Gonzalez standing on Smith's head.  Nor does the video show any responding staff member placing crushing weight on Smith to restrict his breathing.  (Id., ¶¶39-40.)

During the course of this search, neither Unit Manager Lindsay nor Lieutenant Gonzalez recall Smith asserting any complaints concerning his inability to breathe and/or a shortness of breath caused by the actions of staff.  (Id., ¶41.)  Moreover, the videotaped medical assessment of Smith made by prison medical staff immediately following this incident contradicts Smith's claims regarding the severe injuries he alleged that he suffered in this episode.  Smith was medically assessed by Paramedic Jarrett Tuttle immediately after this incident.  (Id., ¶ 46.)  In the course of this viedotaped medical assessment, Paramedic Tuttle asked Smith, "[d]o you have any injuries?"  In response to this specific inquiry Smith did not describe the crushing chest injuries he now alleges in his complaint, or the severe head injuries he claims to have suffered in his pleadings, and the physical examination reveals no such injuries. Instead, Smith replied, "Ah, I believe my wrist."  After a seven-second pause, Smith also added, "it feels like the right side of my face."  When asked, Smith clarified it was his right wrist that was injured.  While a small abrasion was noted on Smith's right cheek, Paramedic Tuttle did not observe any outward signs of injury to Smith's right wrist.  (Id., ¶¶47-52.)  Smith was then advised to seek out follow-up care if his condition worsened.  (Id. ¶53.)  At no time, however, did Smith complain of numbness, visual disturbances or head pain, nor did he assert any complaints that excessive force was used during the pat search affecting his ability to breathe.  (Id., ¶54.)

### B.    **Procedural History**

This *pro se* civil rights action was initially brought by the plaintiff, through the filing of a complaint on December 3, 2013. (Doc. 1.) As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation. Thus, on December 3, 2013, the District Court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 5, p. 2.)

On August 4, 2014, the defendants filed a second[1] motion for summary judgment, in this case. (Doc. 28.) Relying upon the uncontested viedotaped evidence, the defendants argued in this motion that Smith's excessive force claims failed as a matter of law since nothing depicted in the video displayed sadistic or malicious abuse

---

[1] The defendants had also filed a prior motion raising administrative exhaustion issues. (Doc. 16.) That motion is rendered moot by our resolution of the merits of this claim.

of this inmate.  On October 7, 2014, Smith sought an extension of time in which to respond to this motion, (Doc. 39.), a request which we granted, permitting Smith to respond to the motion by November 7, 2014.  (Doc. 40.)  Smith did not meet this deadline, but requested a second extension of time, (Doc. 42.), which we also granted, (Doc. 43.), instructing Smith  to respond to the motion by November 28, 2014, and warning the plaintiff in clear and precise terms that:  "It is now well-settled that 'Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency "if a party fails to comply with the [R]ule after a specific direction to comply from the court."  <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991).'  <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  Therefore, a failure to comply with this direction may result in the motion being deemed unopposed and granted."  (<u>Id</u>.)

Despite this explicit warning, the plaintiff has not responded to this summary judgment motion, and the time for responding has now passed.  Therefore, in the absence of any timely response by the plaintiff, we will deem the motion to be ripe for resolution.  For the reasons set forth below, we recommend that this summary judgment motion be granted.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.'  Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc.,

No. 09-1704,  2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  In this case the

plaintiff has not complied with the Local Rules, or this Court's orders, by filing a

timely response to this motion.  Therefore, these procedural defaults by the plaintiff

compel the Court to consider:

> [A] basic truth:  we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice.  *See*
> Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve
> cases on their merits whenever possible.  However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157
> F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of

our legal system.  A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly breached,

"would actually violate the dual mandate which guides this Court and motivates our

system of justice:  'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion'." Id.  Therefore, we are obliged to ensure that one

party's refusal to comply with the rules does not lead to an unjustified prejudice to

those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this summary judgment motion.  These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this dispositive motion.

## B.      Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness

–9–

of the claim or defense.  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)).  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to this defense motion.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also Ware v. Rodale Press, Inc</u>., 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988).  It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe  v. Klaus</u>, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has failed to respond to a defense motion, has failed to timely file pleadings, and has not complied with orders of the Court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as

consistent non-response . . . , or consistent tardiness in complying with court orders."
<u>Adams</u>, 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative.  <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that

this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

## C.    The Plaintiff's Claims Fail on Their Merits

In any event, Smith's claims fail on their merits given the undisputed evidence currently before the Court. In this case the defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by

citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). .3d 1267, 1275, n.17 (3d Cir. 1995).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to

rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Furthermore, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Finally, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.  In fact, it is clear that, in this setting, we must view the facts in the light depicted by the videotape.  <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").  This principle applies with particular force to inmate excessive force claims which entail videotaped encounters with staff.  Where a videotape refutes an inmate's claims that excessive force was used against him, and

the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate.  <u>Tindell v. Beard</u>, 351 F.App'x 591 (3d Cir. 2009).

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment excessive force claims, which are judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, and are governed by the same overarching and animating constitutional benchmarks.  As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment."  However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  <u>Id</u>. (citation and internal quotations omitted).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  <u>Id</u>.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of

> protections.  Id. at 298, 111 S.Ct. 2321.  If not, our inquiry is at an end.
> However, if the deprivation is sufficiently serious, we must determine if
> the officials acted with a sufficiently culpable state of mind.  Id.  In other
> words, we must determine if they were motivated by a desire to inflict
> unnecessary and wanton pain.   "What is necessary to establish an
> 'unnecessary and wanton infliction of pain ...' varies according to the
> nature of the alleged constitutional violation."   Hudson v. McMillian,
> 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

Thus, an Eighth Amendment excessive force claim entails a showing of some subjective intent to injure.  In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]:  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law.  In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322).

There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.  When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S. 386, 396-7 (1989).  In the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).  Moreover, in assessing such claims in a case where an encounter is captured on videotape we are mindful of the fact that when "videotape refutes [an

inmate's] assertion that defendant[s] used excessive force," or when the "video shows that [an inmate] did not suffer any physical distress, and a medical report indicates that he had no visible swelling or injuries," we should conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically," and may enter summary judgment on an excessive force claim. Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009).

Guided by these benchmarks, we conclude that the defendants are entitled to summary judgment in this case on Smith's Eighth Amendment excessive force claims since the immutable witnesses, the videotape evidence, "refutes [Smith's] assertion that defendant[s] used excessive force," and we conclude "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically." Tindell v. Beard, 351 F. App'x 591, 596 (3d Cir. 2009). Indeed, there is nothing in the videotape depiction of this cell extraction that could be characterized as in any way malicious or sadistic, the essential prerequisite to an Eighth Amendment violation. Quite the contrary, the video is striking and notable for the restraint exhibited by correctional staff, and for the care and attention which they give to Smith's superficial injuries. Observing the videotape it is simply impossible to say

that any "reasonable finder of fact could view the video of the incident and determine

that [defendants] acted maliciously and sadistically." Tindell v. Beard, 351 F. App'x

591, 596 (3d Cir. 2009). Therefore, summary judgment is appropriate here as to this

claim.

But even if Smith had stated a colorable constitutional claim relating to this cell

extraction, the defendants would still be entitled to qualified immunity from these

claims for damages. In order to establish a civil rights claim Smith must show the

deprivation of a right secured by the United States Constitution or the laws of the

United States. Satisfying these elements alone, however, does not guarantee that

Smith is entitled to recover damages from these public officials. Government officials

performing "discretionary functions," are insulated from suit if their conduct did not

violate a "clearly established statutory or constitutional right[] of which a reasonable

person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also

Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified

immunity, provides officials performing discretionary functions not only defense to

liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d

664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they

perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.  Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  Wilson, 526 U.S. at 615.  The

Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant

(viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In the specific factual context of excessive force claims, courts have acknowledged that, in certain instances, summary judgment is entirely appropriate. Gilles v. Davis, 427 F.3d. 197, 207 (3d Cir. 2005).  With respect to these particular excessive force claims, courts agree that:  "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff,[ ] the officer's use of force was objectively reasonable under the circumstances.' "  Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005). Applying these benchmarks, and viewing the actions of correctional staff in the light depicted by the videotapes, we find that the defendants are entitled to qualified immunity in this case.  Nothing in the measured and restrained conduct depicted in the videos could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).

In sum, this merits analysis reveals that this summary judgment motion is on its face meritorious. Therefore, we find that all of the <u>Poulis</u> factors call for dismissal of this case. Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d  229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion for summary judgment, (Doc. 28.), be GRANTED and the plaintiff's complaint be dismissed. In light of this merits resolution it is further

recommended that the defendants' prior summary judgment motion which raised administrative exhaustion issues (Doc. 16.) be DISMISSED as moot.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of December, 2014.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge