## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORATIO DEMARIOS SMITH, | : | Civil No. 1:13-CV-2914 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Caldwell) |
| | : | |
| R. LINDSEY, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This *pro se* civil rights action was initially brought by the plaintiff, a federal prisoner, through the filing of a complaint on December 3, 2013. (Doc. 1.) In this complaint, Smith leveled claims of constitutional violations involving the alleged use of excessive force by prison staff against two correctional defendants, defendants Lindsey and Gonzalez. (Id.) These claims have now been dismissed. (Doc. 51.)

Smith's complaint also named a third defendant, Lieutenant Sudol, and asserted that this defendant had retaliated against Smith. (Id.) In particular, Smith alleged that "since plaintiff's inception in USP, Canaan's Special Housing Unit, plaintiff experienced a kaleidoscope of arbitrary retaliatory actions on behalf of Defendant K. Sudul in light of plaintiff pursuing his administrative remedy rights …." (Id.)

Defendant Sudol has filed a motion for summary judgment relating to this retaliation claim, arguing that this claim should be dismissed due to Smith's failure to exhaust his administrative remedies with respect to this particular claim prior to filing this lawsuit. (Doc. 16.)  With respect to this question of administrative exhaustion, the undisputed facts reveal the following:

The Federal Bureau of Prisons ("BOP") has established a three-tier administrative remedy procedure with respect to inmate complaints, found at 28 C.F.R. § 542.10, *et seq*.  Inmates are instructed to first informally present their complaints to the staff and the staff is to attempt to resolve the matter.  28 C.F.R. § 542.13(a).  If the informal resolution is unsuccessful, the inmate is directed to then complete the appropriate form to bring the matter to the attention of the warden within twenty (20) calendar days of the complained about event.  28 C.F.R. § 542.14.  The warden, in turn, is to respond to the inmate's complaint within twenty (20) calendar days.  28 C.F.R. § 542.18.  If an inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director within twenty (20) calendar days. 28 C.F.R. § 542.15(a).  If the response of the Regional Director is not satisfactory, the inmate then has a final avenue of redress.  He may appeal to the Central Office of the Federal Bureau of Prisons within thirty (30) calendar days, which office is the final

administrative appeal in the Bureau of Prisons. Id. [1]  An inmate has not exhausted all

available remedies to enable him to file suit in federal district court until the complaint

has been filed at all levels of the process and has been denied at all levels prior to

filing suit.

In this case, with respect to the retaliation claim leveled against Lt. Sudol, the

evidence reveals that Smith made only halting, and procedurally incomplete efforts to

exhaust his administrative remedies before filing this complaint.  Specifically, while

Smith alleges in his complaint that he had been experiencing "arbitrary retaliatory

actions" by defendant Sudol "since plaintiff's inception in USP, Canaan's Special

Housing Unit," Smith only filed seven administrative remedies which related to events

which occurred at that facility.  ( Doc. 18 Ex. 1 at pp. 21-24, 26, "EVT FACL: CAA",

indicating USP Canaan to be the facility where the event/subject of remedy occurred,)

One of these administrative remedies alleged retaliation by Lieutenant Sudol,

but the undisputed evidence shows that this administrative grievance was never fully,

properly or timely exhausted by Smith.  Specifically, on August 8, 2013, Smith filed

a administrative remedy at the institutional level alleging staff was retaliating against

---

[1]An exception is made for appeals of discipline hearing officer decisions, which are first raised directly to the Regional Office level and then to the Central Office level. 28 C.F.R. § 542.14(d)(4).

him.  (Id. at 24.)   A copy of the remedy, which Smith attached to his brief in

opposition to the defendant's motion for summary judgment, recites as follows:

> This writer is being subject [to] a kaleidoscope of retaliatory action based
> on my pursuit of my administrative remedy rights, to wit:
>
> On 7/31/13, I have been capriously [sic] placed on disciplinary
> segregation without provocation.   As I was sanctioned 60 days
> [administrative segregation] time on April 13, 2013.  Moreover, I have
> made several attempts thru Lt. Sudul, AW Miller, etc., to review my
> personal property since the very same inmate I assaulted for stealing was
> allowed access to my property outside of my presence.  Notwithstanding
> I have made several verbal and written requests to Lt. Sudul for copies
> of my Form 40 property inventory to no avail.
>
> And, finally, I have requested several times for cell move in light of my
> cellmate and I have had verbal confrontation.  Consequently, [illegible]
> to physical altercation.   My cellmate is currently held in SHU for
> purporttly [sic] stealing.  This arbitrary action is without provocation and
> subject me additional incident report or possible criminal prosecution.

(Doc. 22, p. 50.)

While this initial grievance form seems to relate to the subject matter of the

plaintiff's complaint against defendant Sudol, the evidence reveals that this grievance

was not fully exhausted prior to filing this lawsuit.  Thus, within days of submitting

this initial grievance, the administrative remedy request was rejected by prison

officials for multiple reasons–including Smith's attempt to raise more than one

issue[2]—and Smith was provided five days to resubmit his request in proper form. (Id.

---

[2]Prison officials correctly observed that this grievance violated prison policy
by incorporating multiple issues in a single grievance.  On its face, this grievance

at 49.)  The rejection notice was mailed to Smith at USP Canaan on or about August

13, 2013. (<u>Id</u>.)

There is no record that Smith took further steps to exhaust this grievance prior

to filing the instant lawsuit on December 3, 2013.  While Smith has alleged that he

 "was never informed" that he could not raise multiple claims in an administrative

remedy, (Doc. 21 pp. 5-6.), the prison regulations governing grievances are very clear

on this score and state that:  "The inmate shall place a single complaint or a reasonable

number of closely related issues on the form.  If the inmate includes on a single form

multiple unrelated issues, the submission shall be rejected and returned without

response, and the inmate shall be advised to use a separate form for each unrelated

issue."  28 C.F.R. 54 2.14(c)(2).

Furthermore, Smith acknowledges receipt of the rejection notice on this

grievance, albeit belatedly.  According to Smith, he received the August 13, 2013,

rejection notice on October 27, 2013.  This delay appears to have been a function of

Smith's transfer from USP Canaan on August 19, 2013.  (Doc. 22, ¶ 8.)  However,

once Smith received the rejection notice, he took no timely efforts to complete the

---

raises a host of issues concerning alleged retaliation, examination of personal
property, disciplinary actions taken against Smith, cell placement decisions, and
deputes with a putative cell mate.

grievance process.  Instead, Smith elected to file this complaint without engaging in any additional efforts to fully and properly grieve this matter within the prison system.

On these facts, defendant Sudol has moved for summary judgment, arguing that the undisputed evidence shows that Smith failed to exhaust his administrative remedies prior to filing this lawsuit. (Doc. 16.)  We agree, and recommend that the motion for summary judgment be granted.

## II.   Discussion

### A.   Summary Judgment Standard of Review

In this case, defendant Sudol has moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the

light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub.</u> <u>Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc.</u> <u>v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). .3d 1267, 1275, n.17 (3d Cir. 1995).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental</u> <u>Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark</u> <u>NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v.</u>

Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient

to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the

opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458

(3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to

rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v.

Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519

(3d Cir. 1981)).

Furthermore, a party who seeks to resist a summary judgment motion must also

comply with Local Rule 56.1, which specifically directs a party opposing a motion for

summary judgment to submit a "statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [to be filed by the movant],

as to which it is contended that there exists a genuine issue to be tried"; if the

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the

Local Rules, the failure to follow these instructions  and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement.  This Local Rule serves several
> purposes.  First, it is designed to aid the Court in its determination of
> whether any genuine issue of material fact is in dispute.  Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B.    The Prison Litigation Reform Act's Exhaustion Requirement

Defendant Sudol urges the court to grant summary judgment on the plaintiff's claims because Smith failed to fully exhaust the administrative remedies available to him under federal prison regulations. In this case Smith's alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate

complaints, including damages complaints like those made here.   While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.   This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies.   As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements.   They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."   Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards.   And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages.   In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring.   An across-the-board exhaustion requirement also promotes judicial efficiency. . . .   Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.   The administrative process can serve to create a

> record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, as the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility,

inadequacy or any other basis.") (quoting <u>Beeson v. Fishkill Corr. Facility</u>, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. <u>Id.</u> at 90; <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>, 49 F. App'x at 368. <u>See also</u> <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance);

Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the correctional agency policies were not clearly explained to him.  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's alleged confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

**C.    Smith's Complaint Against Defendant Sudol Should Be Dismissed as Unexhausted**

Judged against these benchmarks, Lieutenant Sudol is entitled to dismissal of this complaint due to Smith's failure to fully, properly, and timely exhaust his administrative grievances prior to filing this action.  In this case the undisputed evidence shows that Smith's sole grievance relating to alleged retaliation by Lieutenant Sudol was never fully or properly exhausted prior to filing this complaint. That initial grievance was filed in what was plainly a procedurally inappropriate fashion, in that it was included among a catalogue of inmate grievances, in August 2013.  The grievance was promptly rejected, and Smith received notice of that rejection.  While the parties may dispute when Smith received that notice, it is undisputed that Smith did obtain notice of the rejection of this grievance in October 2013.  However, there is no further indication that Smith took timely efforts to correct this procedural default prior to filing the instant lawsuit in December 2013.

Smith's complaints regarding his alleged confusion concerning prison procedures, or any claimed delay in receive of the notification of his procedural defaults in this grievance are ultimately unpersuasive for at least two reasons.  First, contrary, to Smith's suggestion, the regulations governing grievances are actually quite clear and clearly state that:  "If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and

the inmate shall be advised to use a separate form for each unrelated issue." 28 C.F.R.
54 2.14 (c)(2).  Given this clarity, Smith cannot avoid this exhaustion requirement by
merely alleging that the correctional agency policies were not clearly explained to him.
Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, it is undisputed
that Smith received notice of the initial rejection of his grievance in October 2013, but
failed to further pursue that grievance prior to filing this action.  Therefore, even if we
accepted Smith's assertion regarding delayed notice and viewed that delay as an
impediment to his full exhaustion, it also appears that Smith did not pursue a proper
grievance once those impediments were removed, a fact which now bars this claim.
Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if,
after staff allegedly ceased efforts to impede grievance, prisoner failed to follow
through on grievance).

Finally, Smith cannot contend that the delay in receiving notice of the rejection
of this grievance barred him from completing the grievance process, since prison
regulations would have expressly allowed him to obtain an extension of time in which
to fully grieve this matter.  Those regulations state in clear an precise terms that:
"Where the inmate demonstrates a valid reason for delay, an extension in filing time
may be allowed.  In general, valid reason for delay means a situation which prevented
the inmate from submitting the request within the established time frame.  Valid
reasons for delay include the following: an extended period in-transit during which the

inmate was separated from documents needed to prepare the Request or Appeal . . . ."
28 C.F.R. § 542.14(b).

In short, Smith's failure to exhaust his administrative remedies is both unexcused and inexcusable. Therefore, this failure to exhaust these remedies, which is required by law as a prerequisite to filing a lawsuit, now bars Smith from further pursuing these claims in federal court.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion for Summary Judgment, (Doc. 16.), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of March 2015.

<u>**_S/Martin C. Carlson_**</u>
Martin C. Carlson
United States Magistrate Judge